# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,      )
                                       )
         Plaintiff,       )
                                       )
v.                                 )      Case No. CR-18-159-D
                                       )
DR. JAMES M. FERRIS, M.D., and      )
KATHERINE DOSSEY,             )
                                       )
         Defendants.     )

## ORDER

Before the Court is Defendant Katherine Dossey's Motion in Limine Re: Testimony Defining "The Applicable Law" [Doc. No. 43], which Defendant James Ferris adopted [Doc. Nos. 71, 75]. The United States has responded [Doc. Nos. 68, 76]. The matter is fully briefed and at issue.

## BACKGROUND

Katherine Dossey, a licensed pharmacist, and Dr. Ferris, a licensed physician, ("Defendants") are charged in a 103-count Indictment with distributing controlled substances outside the usual course of professional medical practice, in violation of 21 U.S.C. § 841(a)(1), and Medicare fraud, in violation of 18 U.S.C. § 1347. [Doc. No. 1]. The United States anticipates offering the testimony of expert witnesses who will opine that Defendants' conduct fell outside the usual course of professional practice. The expert witnesses are expected to refer "both directly and indirectly" to the statutory and regulatory standards that govern professional practice for physicians and pharmacists. [Doc. No. 68 at 2]. Defendants seek to preclude any witness from testifying or giving an opinion

concerning "the applicable law." [Doc. No. 43 at 1]. Defendants assert that such testimony invades the province of the Court and the jury, and is improper under FED. R. EVID. 403 and FED. R. EVID. 701 through 705, addressing opinion and expert testimony.

**STANDARD OF DECISION**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to mange the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). As such, "[t]he purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) (*quoting Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

Despite these streamlining benefits, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). "Consequently, a court should reserve its rulings for those instances when the evidence plainly is 'inadmissible on all potential grounds' … and it should typically defer rulings on relevancy and unfair prejudice objections until trial when the factual context is developed[.]" *Id.* (citations omitted); *see also Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."). Further, "the district court may change its ruling at any time for whatever reason it deems

appropriate." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995); *see also Luce*, 469 U.S. at 41 ("The ruling is subject to change when the case unfolds …. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## DISCUSSION

Defendants are charged in Counts 1-62 with knowingly and intentionally distributing and dispensing and causing the distribution and dispensing of Schedule II controlled substances outside the usual course of professional medical practice, in violation of 21 U.S.C. § 841(a)(1). [Doc. No. 1]. To prescribe controlled substances, a doctor must be authorized "to prescribe controlled substances by the jurisdiction in which he is licensed to practice his profession" and he must have a registration number issued by the Drug Enforcement Administration. 21 C.F.R. § 1306.03(a). Further, under federal regulations, a "prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). "[A] corresponding responsibility rests with the pharmacist who fills the prescription." *Id.* An order purporting to be a prescription that is not issued in the usual course of professional treatment is not a valid prescription, and "the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances." *Id.*

Interpreting § 841, the Supreme Court in *United States v. Moore*, 423 U.S. 122, 124 (1975) held that registered physicians can violate this section when their activities fall

outside the usual course of professional practice.  "[O]nly lawful acts of registrants are exempted" from prosecution under § 841.  *Id.* at 130; *see also United States v. Nelson*, 383 F.3d 1227, 1231-1232 (10th Cir. 2004) ("A practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose.").  Specifically, the United States must prove that (1) Defendants distributed or dispensed controlled substances; (2) Defendants acted knowingly and intentionally; and (3) Defendants' actions were not for legitimate medical purposes in the usual course of professional medical practice or were beyond the bounds of medical practice.  *United States v. Schneider*, 704 F.3d 1287, 1295 (10th Cir. 2013).

To assist the jury in understanding the evidence, the United States intends to call expert witnesses to testify.  Citing to FED. R. EVID. 701 through 705, Defendants ask the Court to exclude such expert testimony.  The Tenth Circuit addressed these arguments in *Schneider*, which presents similar facts to the case at bar.  *Schneider*, 704 F.3d at 1293-1294.

Dr. Schneider was a doctor of osteopathic medicine, and his wife was a licensed practical nurse.  *Id.* at 1290.  They owned and operated a pain management clinic and prescribed controlled substances.  *Id.*  They were convicted of unlawful drug distribution and health care fraud.  *Id.* at 1292.  On appeal, they argued that the district court improperly allowed expert witnesses to testify that Dr. Schneider was guilty of the crimes charged, as to legal opinions, and about Dr. Schneider's state of mind.  *Id.* at 1293.  Finding no error in the admission of the expert testimony, the Tenth Circuit emphasized that the evidence

rules "allow an expert to opine on an 'ultimate issue' to be decided by the trier of fact" as long as the expert does not "'tell the jury what result it should reach.'" *Id*. (*quoting United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) and *citing* FED. R. EVID. 704(a)). The expert witnesses in *Schneider* did not tell the jury to reach a particular verdict, but explained in detail their observations from the evidence and summarized their findings. *Schneider*, 704 F.3d at 1293-1294. Such testimony was properly admitted. *Id.* at 1294.

The Schneiders also argued that the expert witnesses impermissibly offered legal conclusions that Dr. Schneider engaged in conduct outside the ordinary course of medical practice. *Id.* Prior to trial, the Schneiders had moved in limine to exclude the testimony, and the trial judge denied the motion. *Id.* The Tenth Circuit noted that experts may refer "'to the law in expressing [their] opinion.'" *Id*. (*quoting United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)). The use of the phrase "other than legitimate medical purposes" is not a specialized legal term; thus, the expert does not usurp the jury's function by using that phrase in his testimony. *Schneider*, 704 F.3d at 1294.

Although Defendants' motion quotes extensively from *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), they omit the most relevant and distinguishing excerpts from that case. *Specht* was a § 1983 civil rights action in which the plaintiffs sought to recover for the defendants' alleged unlawful searches of the plaintiffs' home and office. *Id.* at 806. Over the defendants' objection, the plaintiffs called an attorney to testify who concluded that there had been no consent given for the searches and the searches were illegal. *Id*. at 807. On appeal, the Tenth Circuit concluded that the attorney's testimony was beyond the scope of the Federal Rules of Evidence and thus inadmissible. *Id.* at 806. The Tenth Circuit,

however, was careful to draw a distinction between an attorney's testimony and testimony of any other expert witness. *Id*. at 809 ("There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness."). The testimony of a medical expert is not equivalent to that of a legal expert "because the former does not usurp the function of the court." *Id*. at 810.

The Tenth Circuit in *Specht* further explained that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id*. at 809. For example, in *United States v. Buchanan*, 787 F.2d 477, 483 (10th Cir. 1986), the Tenth Circuit held that it was permissible for an expert to testify that a certain weapon had to be registered with the Bureau of Alcohol, Tobacco, and Firearms. In that case, the expert's opinion focused on a specific question of fact and did not invade the jury's function. *Id*.

In the wake of *Specht*, the Tenth Circuit has "prohibited evidence that purely addresses questions of law." *United States v. Wade*, 203 Fed. Appx. 920, 930 (10th Cir. Oct. 30, 2006) (unpublished).[1] "On the other hand, [the Tenth Circuit has] allowed experts to apply the law to the facts to reach a discrete legal conclusion relevant to the case." *Id*. "The crucial distinction lies between 'discoursing broadly over the entire range of the applicable law,' which is improper, and 'focus[ing] on a specific question of fact,' which is permissible." *Id*. (*quoting Specht*, 853 F.2d at 808). Expert testimony on whether

---

[1] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

Defendants' conduct fell outside the usual course of professional practice would "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Further, the expert witnesses for the United States can refer to the statutory and regulatory standards cited in the Indictment, without invading the province of the Court or the jury.

Defendants also object to the admissibility of such expert testimony under FED. R. EVID. 403. "Rule 403 does not protect a party from all prejudice, only unfair prejudice." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *Id.* Further, exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (internal citation omitted).

In *United States v. Betancourt*, 734 F.2d 750, 753 (11th Cir. 1984), the defendants, who were medical doctors, were charged with a violation of 21 U.S.C. § 841(a)(1). To assist the jury in establishing the usual course of professional medical practice, the government called two medical doctors to the stand. *Id.* at 757. On appeal, the defendants argued that the district court erred in not excluding the doctors' testimony under Rule 403. *Id.* The Eleventh Circuit concluded that the trial judge had not abused his discretion in admitting the doctors' testimony to help the jury establish the standard of medical practice. *Id.* "To reach its decision the jury needed medical testimony as to what the drug is, how it is properly used, how it can be abused and the medical profession's view of the drug. *Id.*

Accordingly, the Court finds that the probative value of the purported expert witnesses' testimony is not substantially outweighed by the risk of unfair prejudice resulting from its admission.

**CONCLUSION**

Based on the foregoing, Defendant Katherine Dossey's Motion in Limine Re: Testimony Defining "The Applicable Law" [Doc. No. 43], which Defendant James Ferris adopted [Doc. Nos. 71, 75], is DENIED. Defendants may make contemporaneous objections during trial if the proffered testimony exceeds the parameters set forth in this Order.

**IT IS SO ORDERED** this 3rd day of September 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge